Good morning, Your Honors. May it please the Court, my name is Lori Tyker. I'm with the Federal Public Defender's Office in the District of Nevada, and I'm appearing on behalf of Petitioner Appellant Sam Abraham. I'd ask to reserve one minute in rebuttal. This is a habeas case where Sam Abraham was looking at multiple counts that were carrying life sentences. He also faced similar counts in another case that was being tried simultaneously in another courtroom by the same district attorney. He represented himself in that case. The case that we have here is where he was represented by counsel but wanted to represent himself, as he's entitled to do under Feretta. This claim, of course, begins with what the standard of review is. The standard of review is whether the U.S. District Court's decision to deny Mr. Abraham's petition is reviewed de novo. The issue here is whether, under AEDPA, the Nevada Supreme Court's opinion upholding the trial court's decision is contrary to or an unreasonable application of Feretta and Mr. Abraham's right to self-representation. The answer here is unequivocally yes. You have both here. Feretta gives you the unbridled right to represent yourself so long as you're competent. Mr. Abraham's requests here, in looking at the long ---- Kagan, isn't there another component, too, which is timeliness? There is. There is. And what ---- in terms of what the Nevada Supreme Court opinion has done on direct appeal is this circuit has held that because Feretta doesn't address timeliness beyond weeks before trial. That's as close as the U.S. Supreme Court comes. This circuit has held that you can use case law to interpret that condition of Feretta, and that would be pursuant to Marshall v. Taylor and other courts. However, here, if you look at the Nevada Supreme Court opinion, which is located at EOR 508, the Nevada Supreme Court here puts an artificial condition on Feretta, saying that Lyons, which is a case, a Nevada case interpreting Feretta, held that the request to represent oneself is untimely if the request does not come early enough for a continuance. And so what they've done here, what the Nevada Supreme Court has done here, is said to Mr. Abraham that we've held that you can represent yourself, but it's untimely if you're asking for a continuance. Well, his first really unequivocal request came about five days before trial, which had been reset several times. And what Supreme Court precedent is violated by the Nevada Supreme Court's conclusion that it was permissible to deny a request that came so close to the trial date? Well, in terms of the Nevada Supreme Court, or I'm sorry, United States Supreme Court precedent, what under AEDPA, Williams v. Taylor says that the Supreme Court states that rules of law can be sufficiently clear for habeas even when they're in terms of a generalized standard rather than a bright-line rule. So you have the Supreme Court saying that timeliness under Feretta is several weeks before, but this Court has said you can go beyond that and impose the timeliness component to that so long as you're not contrary to what Feretta is giving you. Well, to adopt your position, though, we would have to tell the Nevada Supreme Court that even though the request came five days before the start of trial and there had been several previous continuances, Supreme Court law required them to come to an opposite conclusion. No, I disagree. First of all, it's not like you're dealing with the what I would title the fifth motion that he has filed at this time, letting this Court know, letting this trial judge know, I'm having issues here. Granted, the first three motions that he's asking for, he's phrased those as motion to appear pro se and motions for appointment of new counsel. He withdraws a few of those. What our position is that the first time that he actually cites Feretta and the first time that this trial court should have had a duty to hear that motion was with the motion for substitution of counsel that was filed. Except isn't the motion for substitution of counsel, which the trial court did go over with him orally, isn't that just the opposite of a motion to represent yourself? If you say, I want a new lawyer, actual lawyer, that isn't the same as representing yourself. It's not the same as representing yourself. However, in looking at that motion, and again, you have a pro se litigant here who isn't exactly artfully stating his position, but within that motion, there's a very clear discussion about Feretta. He's saying, my lawyer, you know, my lawyer is not doing what I want. He's not putting forth the motions that I want. He's not putting forth the defense that I want. Under Feretta, I'm entitled to go forward myself. He's got a motion. He frames that as a motion for substitution of counsel. But this is like Armand v. Marquez. In Armand v. Marquez, what happens is you've got a pro per litigant who does the same kind of thing. He inartfully titles that motion. But in the other case, the court went over it with him out loud and asked him to clarify it. And he said that what he was seeking was a new lawyer and that he wanted to act as co-counsel with his new lawyer. But he didn't ask to be he made it clear, in my view, I think it's around page 225 or 226 of the excerpts, that he really is looking to have somewhat more control over his counsel, but he's not looking to go with no counsel at all. Well, what I would say to that, Your Honor, is that in terms of looking at actually what happened at that hearing, all that is said, I think it's important to look at the hearing before that as well, to put it into context. Because he files the motion 25 days before trial in terms of the motion for substitution of counsel. That's what he's titled it, where he clearly cites Ferretta. At that time, it's heard 20 days later at calendar call. You need to look at what the trial court is saying in the record in terms of what he's asking for and what it's all about. It's very clear when you look at that where you have another public defender who's not Mr. Abraham's counsel standing there and saying to the judge, okay, we've got this motion here. He's talking about Ferretta. I really think it's important that you talk to him about this. Okay. This is all very sympathetic facts. But under our standard, in a bullion queue, where was the clear violation of Federal law here? I think the clear violations were, and what's contrary to an unreasonable application of Ferretta, are twofold. First, in response to the motion to proceed pro se, which was filed 10 days before trial. So how do you write our opinion? I write your opinion in that the Nevada Supreme Court got it wrong in a number of ways. They said, and they only dealt with the motion to proceed pro se, which is filed 10 days before counsel. They say there that you can't have that, Mr. Abraham, because you asked for a continuance. That's not – that's contrary to an unreasonable application of Nevada Supreme Court law not entitling him to proceed Ferretta because there's absolutely no – for a number of reasons. There's no discussion there that Mr. Abraham had a reasonable justification for the continuance. This Court has said that you need to show that. You need to show that he had that and talk about whether or not he had a reasonable justification for the continuance. He did at that time. Kagan. What's the closest Federal case that says that a repeated – this is – there were other requests that a – that a repeated request filed a few weeks before trial needs a substantial explanation of specific factors? You've got – Lyons itself talks about that. A Nevada case talks about that. Oh, I'm – we were – a Nevada case. A Nevada case talks about that. But the Nevada Supreme Court doesn't even apply that. So you've got – you've got that where the Nevada Supreme Court doesn't talk about the reasons that he has asked for his defense. In addition, you've got no finding by the Court that the request was for purpose of delay. I'm not hearing a Federal case. We're going to hate you. Fritz v. Spalding. You've got Fritz v. Spalding there that talks about how it's not proper for the court to talk about the effect of the delay, but the purpose for the delay. You have to talk about the purpose for the delay, not just the effect. The effect here that the Nevada Supreme Court has said is that you've got these out-of-town witnesses that are coming in. The case has been continued a number of times. The case was never continued due to Mr. Abraham's fault. It was continued to courtyards, courtrooms not being available, and witness the problems of the States. In addition, you have the – and the other issue here is that final request that he makes the day before trial. The day before trial, this is a Hirschfeld v. Cain situation where you've got the trial court saying the day before trial, in terms of the motion to proceed pro se, he denies that. He denies that because he says it's not timely. That's improper. But then you have yet another request, and this Court, the Nevada Supreme Court, erred in doing that, and that's similar to Hirschfeld v. Cain, where you've got another unequivocal request, and this is where the trial court gets into its bizarre impeachment. Kagan. And it has nothing to do with Loretta. Kagan.            Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Good morning, Your Honors. My name is Dennis Wilson, appearing from the Attorney General's office on behalf of the Respondent in this case. As the Federal District Court held, the Nevada Supreme Court ruling was not contrary to, nor did it involve, an unreasonable application of United States Supreme Court law. The Nevada Supreme Court applied lines v. State. In that case, they clearly addressed the right to represent oneself, and they overturned the Nevada case. Baker and adopt people versus Wyndham. So that is the standard that they apply, which is, Loretta, under the Supreme Court case law. Loretta requires, in order for a defendant to preserve his right to represent himself, Loretta requires that he prove four things. One, that his motion was timely. Two, that his motion was not for the purpose of delay. Three, that it was unequivocal or clear and ambiguous. And last, that his waiver of counsel was knowing and intelligent. I'll first address the November 19th, 1993 motion, which the Court ruled on, on November 29th, 10 days later. That motion was filed on the 19th. It was first brought to the Court's attention at the calendar call five days later, on the 24th. The Court did not rule on it at that time, but did indicate that he was inclined not to grant it. Five days later, he heard the motion and did grant the motion, but he ruled that he would not grant the defendant a continuance. As the courts the Court has discussed, the defendant in this case, his motion to represent himself was not timely. Loretta indicates that it tells us what is timely. Loretta tells us that if a defendant files a motion weeks before trial or well before trial, that that motion is timely. And that difference between the change in the Ninth Circuit Court rule was discussed in Marshall v. Taylor has been cited, too. So there's no doubt that the motion was not timely made. He had plenty of time to make that motion. He came in on that November 19th motion five days before trial, as I indicated. And he wasn't at that hearing, so they continued it to the trial date. Additionally, in this particular case, the trial court found that the motion was made for the purpose of postponing things. The trial court called his motion a last-minute attempt to stall further proceedings. The State had opposed the continuance and said that he had done this same or applied this same tactic in another criminal case. The Court was apparently concerned about that. There were additionally out-of-state witnesses. In order for him to prove that this is a good-faith attempt to represent himself, waiting until ten days before trial to make this motion when he had filed numerous motions, probably in the area of 20 motions between the time of his arraignment and the time of trial, shows that he clearly could have filed that motion earlier, and he didn't, which is evidence that it was not a good-faith attempt to represent himself. It was an attempt to delay the trial. Now, this was with regard to the other claims that are made by the appellant, there really only was one motion that was made. The November 19th motion was the one that was filed asking to represent himself. The October 1st motion was, as you've indicated, a motion to get a new counsel, a motion to substitute counsel, and also a motion to have him appear as co-counsel. What they have called his third or his fifth motion was actually a letter that was In the briefs, the first issue that was addressed by the district court and that was raised in the perverse was that there were two motions made for him to represent himself. One was March 22nd of 1993, and the other one was November 19th of 1993. The trial court, the Federal district court, only looked at those two motions. He didn't look at any others. He didn't look at the October 1st motion. He didn't look at the one that was made on the 30th on the day of trial. He only looked at those two motions. The Federal district court said the first one was withdrawn, which it clearly was, and the only one that was left was this one, the November 19th motion. When the motion for certificate of appealability was filed, the language used in that application was the same as the language that was used in the traverse. So the Federal district court had two issues before it. Was there a timely request, a proper request made to self-represent himself on March 22nd, and was there one on November 19th? There was no motion made in the only issues addressed by the court with those two issues. Okay? So these other things that were raised in the briefs that the court has were not really before the district court. And when he framed the issue in the application, the only one that he really was looking at was the November 19th one. So the other ones are not properly before this Court because they were not certified on appeal to this Court. But based on that, Your Honors, I'd ask you to uphold the Federal district court's ruling that the Nevada supreme court's ruling did not was not contrary to or an unreasonable application of Nevada's of U.S. supreme court law. Thank you. Thank you. We have used your time. The case just argued is submitted for decision, and we will hear the next case for argument. Case of Salford v. Berkeley is submitted on the briefs. And we'll hear Evans v. Vare.
judges: Schroeder, Graber, Holland